**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Jan 10 2014, 9:20 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT, J.S.,

**JOHN T. WILSON**
Anderson, Indiana

ATTORNEY FOR APPELLANT, B.W.,

**CHRISTOPHER A. CAGE**
Anderson, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**ROBERT J. HENKE**
Deputy Attorney General
Indianapolis, Indiana

**REBECCA L. MOSES**
Department of Child Services
New Castle, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE TERMINATION OF PARENT-CHILD) RELATIONSHIP OF B.W., A.W., W.S., & U.S., ) ) B.W., and J.S., ) )     Appellants-Defendants, ) )         vs. ) ) INDIANA DEPARTMENT OF CHILD ) SERVICES, ) )     Appellee-Plaintiff. ) | No. 33A01-1306-JT-270 |

APPEAL FROM THE HENRY CIRCUIT COURT
The Honorable Mary G. Willis, Judge
Cause Nos. 33C01-1210-JT-10, JT-11, JT-12, JT-13

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

## Case Summary

B.W. ("Father") appeals the termination of his parental rights to B.W. and A.W., and J.S. ("Mother") appeals the termination of her parental rights to W.S., U.S., B.W., and A.W. We affirm.

## Issues

Father raises one issue, which we restate as whether the evidence is sufficient to support the termination of his parental rights to B.W. and A.W. Mother also raises one issue, which we restate as whether the evidence is sufficient to support the termination of her parental rights to W.S., U.S., B.W., and A.W.

## Facts

Mother has four children, W.S., who was born in February 1996, U.S., who was born in June 1998, B.W., who was born in August 1999, and A.W., who was born in August 2007. Father has two children with Mother, B.W. and A.W.[1]

The Department of Child Services ("DCS") began working with Mother, Father, and the children in December 2009 under an informal adjustment due to Mother's arrest for check deception and Father's incarceration. The children had previously been placed in a guardianship from October 2006 through August 2007 and in foster care in Kentucky

---

[1] The fathers of U.S. and W.S. were unnamed or unknown.

from August 2007 through June 2008. DCS provided home based counseling, a parenting assessment, and a domestic violence assessment. Initially, Mother and the children were living at a shelter. After Father's release from incarceration, they began renting a home. After an extension, the informal adjustment was closed in August 2010.

In August 2011, Father was convicted of Class D felony battery resulting in bodily injury for an incident involving a battery to B.W. and false informing. He was sentenced to one and one-half years in the Henry County Jail for the battery conviction consecutive to a 180-day sentence for a false informing conviction. In September 2011, DCS learned that Mother and the children were homeless and that Father was incarcerated. Mother and the children had been living with friends, but B.W. was allegedly molested by an adult in the home. Mother and the children were "put up" in a hotel, but Mother had no food stamps left for the month, no income, and no family support. Tr. p. 28. DCS removed the children from Mother's care and placed them together in foster care. DCS filed petitions alleging that the children were Children in Need of Services ("CHINS"). Mother and Father admitted the allegations of the petitions, and the trial court found that the children were CHINS.

In November 2011, the trial court entered a dispositional order, which in part required Mother and Father to: (1) maintain weekly contact with DCS; (2) notify DCS of changes in address, household composition, employment, and telephone numbers; (3) notify DCS of any arrests or criminal charges; (4) keep appointments with DCS and service providers; (5) obtain suitable housing; (6) obtain suitable income; (7) participate in intensive family preservation; (8) participate in home based counseling; and (9) attend

3

visitation with the children. The children remained in foster care. In April 2012, the trial court ordered Mother and Father to undergo a substance abuse assessment, random drug screens, and parenting skills education. The trial court also ordered Father to undergo a mental health evaluation.

Although Mother and Father participated in services, little progress was made toward reunifying the family. Throughout the proceedings, W.S. and U.S. refused to visit with Mother or Father, and in July 2012, B.W. refused any further visitations with them. In September 2012, the trial court approved a permanency plan of termination of Mother and Father's parental rights. DCS ceased providing services in October 2012 and filed petitions to terminate Mother and Father's parental rights.

At the hearing on the petitions, the CASA reported that U.S., W.S., and B.W. did not want to return to Mother and Father's care. The CASA recommended termination of Mother and Father's parental rights due to "[t]he length of time out of the home, the services applied to the family with[out] lasting change in place, and foremost the children's desires." Id. at 190. In an in camera interview, U.S. refused to visit Mother and Father, and he said that he wanted to be adopted by his foster parents. In another in camera interview, B.W. said that she also wanted to be adopted but wanted to maintain some sort of contact with Mother.

The trial court entered findings of fact and conclusions thereon granting DCS's petition to terminate Mother and Father's parental rights. The trial court concluded that there was a "reasonable probability that continuation of the parent-child relationship" posed a threat to the children's well-being. Mother's App. p. 86, 91, 96, 101. The trial

4

court also concluded that termination of parental rights was in the children's best interests due to:

> (1) parents' failure to make adequate progress in court ordered services which were ordered to help parents improve their parental abilities/fitness so they could reunify with their children; (2) parents' failure to demonstrate they have benefitted from the limited services in which they did participate; and (3) older siblings refusal to visit with the parents during the pendency of the underlying CHINS case.

Id. at 89, 94, 99, 104. The trial court also concluded that DCS had an adequate plan for the children, which included adoption. Mother and Father now appeal.

**Analysis**

Father challenges the termination of his parental rights to B.W. and A.W., and Mother challenges the termination of her parental rights to W.S., U.S., B.W., and A.W. The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. In re I.A., 934 N.E.2d 1127, 1132 (Ind. 2010). "A parent's interest in the care, custody, and control of his or her children is 'perhaps the oldest of the fundamental liberty interests.'" Id. (quoting Troxel v. Granville, 530 U.S. 57, 65, 120 S. Ct. 2054 (2000)). "Indeed the parent-child relationship is 'one of the most valued relationships in our culture.'" Id. (quoting Neal v. DeKalb County Div. of Family & Children, 796 N.E.2d 280, 285 (Ind. 2003)). We recognize of course that parental interests are not absolute and must be subordinated to the child's interests when determining the proper disposition of a petition to terminate parental rights. Id. (citing In re D.D., 804 N.E.2d 258, 264-65 (Ind. Ct. App. 2004), trans. denied)). Thus, "[p]arental rights may be terminated when the parents are unable

5

or unwilling to meet their parental responsibilities." Id. (quoting D.D., 804 N.E.2d at 265).

When reviewing the termination of parental rights, we do not reweigh the evidence or judge witness credibility. Id. We consider only the evidence and reasonable inferences that are most favorable to the judgment. Id. We must also give "due regard" to the trial court's unique opportunity to judge the credibility of the witnesses. Id. (quoting Ind. Trial Rule 52(A)). Here, the trial court entered findings of fact and conclusions thereon in granting DCS's petition to terminate Mother and Father's parental rights. When reviewing findings of fact and conclusions thereon entered in a case involving a termination of parental rights, we apply a two-tiered standard of review. First, we determine whether the evidence supports the findings, and second we determine whether the findings support the judgment. Id. We will set aside the trial court's judgment only if it is clearly erroneous. Id. A judgment is clearly erroneous if the findings do not support the trial court's conclusions or the conclusions do not support the judgment. Id.

Indiana Code Section 31-35-2-8(a) provides that "if the court finds that the allegations in a petition described in [Indiana Code Section 31-35-2-4] are true, the court shall terminate the parent-child relationship." Indiana Code Section 31-35-2-4(b)(2) provides that a petition to terminate a parent-child relationship involving a child in need of services must allege, in part:

> (B)     that one (1) of the following is true:

> (i) There is a reasonable probability that the conditions that resulted in the child's removal or the reasons for placement outside the home of the parents will not be remedied.
>
> (ii) There is a reasonable probability that the continuation of the parent-child relationship poses a threat to the well-being of the child.
>
> (iii) The child has, on two (2) separate occasions, been adjudicated a child in need of services;
>
> (C) that termination is in the best interests of the child; and
>
> (D) that there is a satisfactory plan for the care and treatment of the child.

The State must establish these allegations by clear and convincing evidence. <u>Egly v. Blackford County Dep't of Pub. Welfare</u>, 592 N.E.2d 1232, 1234 (Ind. 1992).

## A. Threat To Children's Well-Being

Mother and Father argue that the trial court erred when it determined that the continuation of the parent-child relationship posed a threat to the children's well-being.[2] The trial court noted that, since the initiation of CHINS proceedings, the children have

---

[2] Indiana Code Section 31-35-2-4(b)(2)(B) is written in the disjunctive. DCS concedes that subsection (b)(2)(B)(iii), which concerns repeated CHINS adjudications, is inapplicable here. Consequently, DCS was required to demonstrate by clear and convincing evidence a reasonable probability that <u>either</u>: (1) the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied, <u>or</u> (2) the continuation of the parent-child relationship poses a threat to the well-being of the children. Both Mother and Father argue that the trial court's conclusion that the conditions that resulted in the children's removal or the reasons for placement outside the home of the parents will not be remedied is clearly erroneous. However, the trial court made no findings regarding this factor. Rather, the trial court found a reasonable probability that continuation of the parent-child relationship posed a threat to the well-being of the children, and there is sufficient evidence in the record to support the trial court's conclusion. Thus, we need not determine whether there was a reasonable probability that the conditions that resulted in the children's removal and continued placement outside Mother and Father's home would not be remedied. <u>See, e.g.</u>, <u>Bester v. Lake County Office of Family & Children</u>, 839 N.E.2d 143, 148 n.5 (Ind. 2005); <u>In re T.F.</u>, 743 N.E.2d 766, 774 (Ind. Ct. App. 2001), <u>trans. denied</u>.

7

not been returned to Mother or Father. The trial court also noted that Mother "failed to accept responsibility for her choices" that led to the CHINS action and "lacked insight into how this contributed to the extreme deterioration of the parent-child relationship." Mother's App. p. 88, 93, 98, 103. As for Father, the trial court noted the relationship between Father and B.W., U.S., and W.S. was "not remediated." Id.

Mother and Father claim that they substantially complied with the services provided and that they resolved the issues that led to the children's removal. Most of Mother and Father's arguments are requests that we reweigh the evidence and judge the credibility of the witnesses. We cannot do that. Although Mother and Father made progress with respect to their repeated homelessness and instability prior to the termination hearings, they still often ran out of food stamps and money to buy food even though the children were in foster care. Additionally, the service providers testified that, although Mother and Father participated in the services, they made little improvement and did not resolve the tensions between themselves and the older children.

DCS presented evidence that, despite extensive therapy, Mother lacks insight into how her conduct and choices have impacted the situation and her children. Mother refused to take any responsibility for the situation; she blamed Father or U.S. and W.S. Her willingness to "try new things was pretty well nonexistent" because she was comfortable with her parenting skills. Tr. p. 49. However, the therapist described her parenting as "overly structured" and "very rigid." Id. at 56-7. A home based counselor described Mother's parenting as "military type parenting." Id. at 143. The therapist stated that a rigid parenting style "generally hampers the children's opportunity to grow

8

mentally and emotionally in a healthy way." Id. at 59. U.S. and W.S. refused to participate in visitations with Mother or Father.

Father was incarcerated for much of the CHINS proceedings. Part of his incarceration was the result of his battery upon B.W. In July 2012, B.W. refused to participate in further visitations with Mother and Father. Additionally, Mother and the children reported a history of domestic violence in the household, and Mother reported that Father hit her "a lot." Id. at 137.

Father complains that DCS did not make all reasonable efforts to reunite the family, and Mother complains that intensive family counseling was not offered to reunite her with the children. However, the service providers testified that Mother and Father needed to make more progress in individual counseling before they could recommend family counseling, and neither Mother nor Father ever made the required progress. The lack of progress was evident in U.S.'s in camera interview with the trial court and the children's statements to the CASA. W.S., U.S., and B.W. each expressed a desire not to live with Mother or Father, and A.W. has spent most of her life outside the care of her parents.

Given the lack of significant progress during therapy and home based counseling, the lack of a relationship between Mother and Father and the children, and the children's progress in their foster home, we cannot say that the trial court was clearly erroneous when it determined that the continuation of the parent-child relationship posed a threat to the children's well-being.

### B. Best Interest

9

Next, Mother and Father argue that termination of their parental rights was not in the children's best interests. The DCS was required to prove by clear and convincing evidence that the termination was in the children's best interests. In determining what is in the best interests of a child, the trial court is required to look at the totality of the evidence. A.F. v. Marion County Office of Family & Children, 762 N.E.2d 1244, 1253 (Ind. Ct. App. 2002), trans. denied. In doing so, the trial court must subordinate the interests of the parents to those of the child involved. Id. "[T]he historic inability to provide adequate housing, stability, and supervision, coupled with the current inability to provide the same, will support a finding that continuation of the parent-child relationship is contrary to the child's best interests." In re A.H., 832 N.E.2d 563, 570 (Ind. Ct. App. 2005).

Father argues that his lack of a relationship with W.S. or U.S. is irrelevant because he has no parental rights to them. However, his relationship with B.W. was also significantly impacted. In July 2012, B.W. refused further visitation with Mother and Father, and in her in camera interview, B.W. expressed a desire to be adopted. Father made no progress in repairing his relationship with B.W., and A.W. has spent most of her life outside of his care.

At the start of therapy, W.S. was tense, angry, and frustrated when he talked about Mother and Father. U.S. was withdrawn and lacked self-confidence. After about six months of therapy, W.S. was more relaxed and doing well in school. U.S. was more outgoing and confident. After U.S. and W.S. refused to visit Mother, Mother told the home based counselor that U.S. and W.S. were "disrespecting her" and had "turned their

10

backs on her." Tr. p. 136. Mother never made progress in repairing her relationship with the children. In fact, in an in camera interview, U.S. told the trial court that Mother and Father's home was "a messed up place." Id. at 235. He refused to visit Mother and Father, and he wanted to be adopted by his foster parents.

None of the service providers or case managers recommended that the children be returned to Mother and Father during the proceedings, and the service providers, case managers, and CASA recommended that termination of parental rights was in the children's best interests. The trial court concluded that termination of parental rights was in the children's best interests due to:

> (1) parents' failure to make adequate progress in court ordered services which were ordered to help parents improve their parental abilities/fitness so they could reunify with their children; (2) parents' failure to demonstrate they have benefitted from the limited services in which they did participate; and (3) older siblings refusal to visit with the parents during the pendency of the underlying CHINS case.

Mother's App. at 89, 94, 99, 104.

Although Mother and Father made some improvements in housing, income, and stability, little progress was made to improve their relationships with the children. Given the totality of the circumstances, the children's wishes, and Mother and Father's failure to make progress in services, we cannot say that the trial court's conclusion is clearly erroneous.[3]

---

[3] Mother also briefly argues that DCS's plan for the children is inadequate. DCS presented evidence that the plan for the children is adoption. DCS also indicated that, given his age, W.S. might pursue independent living. A satisfactory plan "need not be detailed, so long as it offers a general sense of the direction in which the child will be going after the parent-child relationship is terminated." Lang v.

11

## Conclusion

The trial court's termination of Father's parental rights to B.W. and A.W. is not clearly erroneous. Further, the trial court's termination of Mother's parental rights to W.S., U.S., B.W., and A.W. is not clearly erroneous. We affirm.

Affirmed.

ROBB, J., and BROWN, J., concur.

---

Starke County Office of Family & Children, 861 N.E.2d 366, 374 (Ind. Ct. App. 2007), trans. denied. DCS's plan for the children is satisfactory.